IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

CHRISTOPHER GOODVINE,

    Plaintiff,

v.

SHERIFF RICHARDS, ET AL.,

    Defendants.

OPINION and ORDER

18-cv-259-wmc

---

Plaintiff Christopher Goodvine contends that staff at the Columbia County Jail violated his constitutional rights when he was incarcerated there in 2015. On October 23, 2018, the court granted Goodvine leave to proceed on (1) Eighth, First and Fourteenth Amendment claims against defendants Stuewer and Hatton; (2) Eighth and First Amendment claims against defendant Bursaw; and (3) Wisconsin battery claims against Stuewer, Bursaw and Hatton, all of which arose from an altercation between Goodvine and defendants on October 22, 2015. While Judge Conley will be resolving Goodvine's pending motion for reconsideration and the various motions related to defendants' motion to dismiss, in this opinion I will resolve defendants' motion to compel (dkt. 49) and motion to extend the dispositive motion deadline (dkt. 53).

## I. Motion to Compel (dkt. #49)

Defendants seek an order compelling Goodvine to amend his responses to nine of Goodvine's responses to their discovery requests. Defendants also seek costs and fees incurred in bringing this motion. Defendants explain that Goodvine's January 30, 2019,

1

responses to their discovery requests were inadequate in a number of respects, and that Goodvine has failed to respond to defense counsel's February 15, 2019, letter setting out how his responses were inadequate. I am resolving each complaint as follows:

**Interrogatory No. 1**: Defendants asked Goodvine to provide all facts and produce all documents related to his appeal of his grievance to the sheriff, but Goodvine has not responded. Goodvine represents that he does not have any copies of any documents and that he already provided all relevant facts. If Goodvine has more information, then he must promptly turn it over. If he does not do so by **August 21, 2019, then** he will be precluded from later using in this lawsuit any information that would be responsive to this interrogatory for any purpose in this lawsuit. If he develops additional responsive information after August 21, 2019, then he must disclose it to defendants immediately.

**Interrogatory No. 4**: Defendants asked Goodvine to identify and provide contact information for any witness to the conversation in which defendant Stuewer allegedly told Goodvine that he "like[d] to keep close tabs on you brothers from the hood." Goodvine responded that he does not have the specific information that defendants requested: each witness's full name, telephone number, current address and a description of his relationship to them. However, in their February 15, 2019, letter to Goodvine, defense counsel modified their request, asking Goodvine to report whether the witnesses were inmates or employees, and requesting that Goodvine describe these individuals to the best of his abilities. (Dkt. #50-3.) Defendants' request is fair and Goodvine's response does not address defendants' acknowledgment that he might not have all the information. Accordingly, Goodvine must turn over whatever information he has about witnesses to the

conversation referenced in Interrogatory No. 4 by **August 21, 2019**. Thereafter, Goodvine may supplement his response to this interrogatory as necessary as he collects more responsive information. Goodvine's failure to turn over this information will result in an order precluding him from admitting any evidence from witnesses to this conversation.

**Interrogatory No. 5:** Defendants asked Goodvine to (1) identify inmates involved in the alleged plot by white inmates to get Goodvine removed from the Dorm or lose Huber privileges, (2) describe the evidence that supports Goodvine's allegation that the plot existed, and (3) describe the evidence Goodvine has to support his allegation that jail administrators knew about the plot. Goodvine responded that his evidence is his recollection of events and "witness's statements to him," but he did not provide the names of those witnesses. Defendant's requested the names of those witnesses in the February 15 letter, but Goodvine has not provided them, and he contends that defendants are in the best position to have that information. In any event, Goodvine claims he does not have the information defendants seek.

Defendants have no reason to know who Goodvine intends to call as witnesses, and Goodvine provides no other explanation for refusing to turn over this information. Goodvine must turn over whatever information he has about witnesses who may testify about the alleged plot and that jail employees knew about the alleged plot by **August 21, 2019**. He may then supplement his response as necessary with more specific information. Goodvine's failure to turn over this information will result in an order precluding him from admitting any evidence from witnesses (other than himself) related to allegations that

white inmates plotted to have him removed from the Dorm and/or have his Huber privileges revoked, and that any jail employees knew about it.

**Interrogatory No. 6:** Defendants sought information related to Goodvine's allegations that there were confrontations between "Deputy Hatton and white inmates" where Hatton did not take disciplinary action against the white inmates. In particular, defendants requested the date of each alleged confrontation and the names of the inmates involved, and what evidence supported Goodvine's contention that Hatton took no action. Goodvine responded that he never witnessed such confrontations, and he now argues that this interrogatory did not track his allegations in his complaint accurately: he alleged that he witnesses instances of confrontation between *only* white inmates, and that Hatton, as a witness to those confrontations, took no action.

Goodvine has a point: Goodvine did not allege that Hatton did not take disciplinary action against white inmates for confrontations between Hatton and white inmates. Accordingly, the court will not compel Goodvine to respond to this request as written, and defendants will be required to reframe this interrogatory. Under the circumstances, Goodvine's response to this edited interrogatory will be due 14 days after it is served upon him.

**Interrogatory No. 8:** Defendants requested the names of the other inmates who wanted to file a PREA grievance related to the position of the dormitory toilet facilities, and Goodvine responded that he could not provide their names until defendants gave him the names of the inmates housed with him during the relevant time period. However, in the February 15 letter, defendants responded that Goodvine could describe the other

4

inmates to the best of his recollection. Goodvine's failure to respond to this request lacks merit. Goodvine does not represent that he does not remember any details about the other inmates, and it appears that he has made no effort whatsoever to respond to this request. Accordingly, Goodvine must respond specifically to Interrogatory No. 8 by **August 21, 2019**, and supplement his response as he gathers more information about the other inmates who wanted to file a PREA grievance about the toilet facilities in the dormitory. Goodvine's failure to turn over the information as directed will cause the court to bar him from submitting evidence related to the allegation that other inmates wanted to file a PREA grievance about the toilet facilities in the dormitory.

**Interrogatory No. 9:** Defendants asked Goodvine to identify every person who was a witness to, or in the vicinity of, the events he describes in Paragraphs 13, 14, 15 and 19 of the complaint, providing the name, address, telephone number, and employer of each such person. Goodvine responded by identifying multiple employees, as well as "all inmates in the pod with plaintiff at the time." (Dkt. #50-2, at 3.)

**Request Nos. 3 and 9:** Defendants requested production of all documents Goodvine relied on to respond to their interrogatories and requests for admission, as well as copies of documents that support Goodvine's excessive force and battery claims. Goodvine responded by inviting defense counsel to inspect his records or pre-pay for the records, which defendants argue is non-responsive. Goodvine represents that he cannot pay the cost of producing these documents and reiterates that he will make them available for counsel to copy.

5

Defense counsel probably could arrange to inspect and copy Goodvine's records, but I will not require defense counsel to sift through all of Goodvine's legal materials to try to find the responsive documents. Accordingly, while the court will not compel Goodvine to send copies of responsive documents to defendants, Goodvine must pull out from his materials all documents that are responsive to Request Nos. 3 and 9, so that defense counsel can efficiently review and copy the documents. The court will leave it to the parties to determine the exact time and place for inspection, but Goodvine must have responsive documents set aside and organized for inspection at least 24 hours before the agreed upon inspection time frame.

**Request Nos. 4 and 5:** Defendants requested production of all pleadings, petitions, motions, discovery, witness lists, correspondence and competency evaluations related to the proceedings in Columbia County Case No. 15CF425, including evaluations performed by Dr. Brad Smith, Dr. John Pankiewicz, and Dr. J. Dave M.D. Defendants provided Goodvine with a release form authorizing disclosure of this information to defense counsel, but defendants never received a signed authorization. Goodvine claims that these documents are not relevant to his claims in this lawsuit, but publicly available records of this proceeding show that Goodvine has been charged with violating Wis. Stat. § 940.20(1), battery by prisoners, and that the charge arises from the events that took place on October 22, 2015, at the jail. *See State v. Goodvine*, Case No. 2015CF425 (Columbia Cty., filed Oct. 27, 2015), available at https://wcca.wicourts.gov (last visited July 24, 2019). Given that Goodvine's excessive force and battery claims also arose from events that took place on October 22, 2015, the filings related to this proceeding may lead

to admissible evidence in this lawsuit.  Accordingly, by **August 21, 2019**, Goodvine shall either produce documents responsive to Request Nos. 4 and 5, or sign the authorization giving defense counsel access to those records.

Finally, defendants' request for fees and costs will be denied, since the court is not granting defendants' motion in full and the record of Goodvine's interactions with counsel and the court in this case does not indicate a clear attempt at obfuscation.  That said, to the extent Goodvine does not apply this court's rulings to his future interactions with counsel, I will be more likely to consider awarding defendants fees and costs or otherwise sanctioning Goodvine for failing to comply with the Federal Rules of Civil Procedure.

II.     **Motion to Extend Dispositive Motion Deadline (dkt. 53)**

Defendants ask to extend the August 30, 2019, dispositive motion deadline to September 30, 2019, explaining that they need the additional time to prepare their motion in light of Goodvine's deficient discovery responses.  Their request is well-taken and there is room in the trial schedule to accommodate this extension, so I am granting the motion.

ORDER

IT IS ORDERED that:

(1) Defendants' motion to compel (dkt. 49) is GRANTED in part and DENIED in part, as provided above.

(2) Defendants' motion to extend dispositive motion deadline (dkt. 53) is GRANTED. The dispositive motion deadline is now September 30, 2019.

Entered this 7th day of August, 2019.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge